This is a case in which three of our suspects, all fatherly representatives are Carrillo, Carrillo, and Carrillo, and there's three minor children, Amy, Robin, and Jayden, that were located in this area. This is a case in which the suspects were a protection force in the District Court of Judge, involving a tragic set of circumstances, such as a knife-line injury, which is a long-time discussion. It's related to a tragic incident involving a high-speed pursuit of a well-served area carpenter in Las Vegas Metropolitan Police Department. There are two sets of issues before the Court of Appeal. The first set involves the District Court's granting subpoena changes, dismissing the High Police Court Amendment claim against the area carpenter for excessive force involving the high-speed pursuit. The second set of issues involves the granting subpoena changes, dismissing the High Police Court Amendment claim against the area carpenter. Three of the three cases, one pursuant to the incident investigation supplement, and the second pursuant to the P.U.P. deposition from the Result of the Search and Compulsory Investigation Process in the Police Department, and the number three are pursuant to the same type of policies from the Metropolitan Police Department. Do you agree that if you were in personal use of a knife, which is excessive force involving a high-speed pursuit, that it may not be any errors in those events that are going on around you? I disagree, Your Honor. How can you tell if you don't have a force of that kind or turn it over? Well, you should be able to tell things whether there is any excessive force involving a high-speed pursuit. The case for constitutional violation is also located on the table of the Constitutional Foundation. In my mind, in my words, I think I have some real difficulty with the case as it is. Either I present that or not. We're not just going to put those aside for a second. If you can make it on your force of human violation, if you ever get to it, I'll do it. Do you sign any case in which you're now liable to impose any kind of substantive constitutional violation? No, I didn't ask that question. So the case you're aware of that imposes your now liability on a municipality in the absence of a constitutional violation? No, Your Honor. So let's focus on the first one, because I think that's your argument. I'm going to give you an example. I'm going to turn it over to you, Casey. Thank you. Let's go back to the force of human violation. Go ahead. Scott. Excuse me. Scott, first of all, goes to the Association of Civil and Human Law. Our case is Scott. He has been aware of the history of Congress. He's an assistant. He's a lettering. Sarah is a lettering. And we're in somewhat of a jitter in terms of our case. And, of course, we need to go over that with us. You're going to be the first. Sarah is a testimony. You're going to be the first. You're going to be the first. You don't know what we're dealing with. Oh, no, Your Honor. No, Your Honor. There are a number of attempts to stop him. They can keep him alive for a while. He can't go on. They can even use slingshots. And that didn't stop him. And so he's amazing. He is, I think, he's a very resilient teacher. We should be able to find him on the ropes. So now the question is, the surveillance is a set of circumstances, and it's not a reasonable seizure. Where do those forces collide with each other? That's where he started standing for. He wasn't finished. He didn't want to stay here in the existence. Well, as Mr. Sawyer stated, it occurs that in the illness of a citizen, we usually need to be friendly to him. Can you be friendly to him? He's also being, obviously, very nice. He's a very pleasant fellow. So it's like he's being very personal to some people. The second point is illustrated in the difference between consistently self-abuse or self-admising, those two easy words. Like so, he wasn't, these cases were always concerned with substance abuse issues between politics and security areas. In both of those cases, the violent supervisors still sort of used the substance as substance rather than in politics. He also was called a leftist by his first. And then he used this as a forceful firing into the people. But in this case, he was also a member of the high-ranking class of politicians that he served under. And so he was called a leftist. And now you are on the HGFC, but you say in this case, it is essentially that all of these first-year birds are the responsible stand-by lists and it's much more diverse. That is a significant central distinction. We share, again, we're all social people, first-year birds, and so it's unfortunate to say you're in New York, the supervisors are in New York. But this one is like, we share what happens when social people are told, officer carpenter, stand down, stop, pursue, do that, you have your role, you're on this new lawyer, he's going to help you, you know where he is. You may be in charge of both, but you certainly need to pursue. Officer carpenter, this provides three threat corners to continue to pursue. He's lying to sergeants, he's lying to his clients, to continue to pursue. In the arrest and investigation sequence, Sergeant Talley's testimony to the investigating officer, that's what it was, that he had personally observed Officer Carpenter conceding and pursuing after he told his men to stop, he said, you're going to help me figure out why the supervisor told me to do this. He went to Las Vegas Police Department and he said, well, this is all the more entitled to exercise police enforcement in the circumstances we choose not to. So the supervisor needs to be saying, you might be okay, you know, since we've moved you around the corner, we just don't want you to be in this, you know, range of action that you have to take. It's a scot-free instance. And, in all of this, Sergeant Carpenter, she was in Las Vegas, she was in the city, she was in Las Vegas, and he started a reasonable seizure, but it wasn't that big. We had a nice, easy chase, it was a nice, easy way around the corner. But, he was in the majority of the court seats, you see, and the judge is sort of an artist in the range, he says, you know, there was a couple of minutes, you know, a couple of hours. Yeah, that's how you are. So, so, I, I'm not exactly interested in the briefings themselves, so that's a, a way for your clients to do the shoot, because, I think, it's a close office, I mean, they're in a small city, you can do this in a quiet, quiet room. But, probably not a safe way to court a case in the far west, especially if you're in support of them,   it's a, it's a, it's a, it's a, it's a, it's a, it's a, it's a, it's a, it's a,  it's a, I don't, I don't know what. No. I want to be a good person.
judges: W. Fletcher, Rawlinson, Hurwitz